Counsel, before you begin, we would like to thank you for taking this case and representing this petitioner from the clinic. We appreciate it so very much. Thank you so much, Your Honor. I appreciate it. Okay. Good morning, Your Honors. May I please report? My name is Priscilla Benzor, and I represent the petitioner, Erico Mar Lepe Estrada, and I'd like to reserve two minutes for rebuttal. All right. Counsel, please be reminded that the time showing is your total time remaining. Okay. I will. Thank you so much. Reasonable fear proceedings are designed to weed out frivolous claims to fear made by non-citizens in summary removal proceedings, but petitioner's claims are meritorious, and he provided more than enough evidence necessary to meet the threshold inquiry at this stage, and he merits the opportunity to be heard at a full hearing for withholding and cat relief. Here the I.J. erred as to procedure and substance when he summarily affirmed the asylum officer's negative reasonable fear determination. Counsel, if you wouldn't mind distinguishing the Canales case for us. I'm sorry, could you repeat the question? The government relies on Canales on this procedural point, maintaining that it indicates there's no real reversible error. Do you distinguish Canales? Yes, Your Honor. So in Canales, the I.J., the immigration judge in that case, briefly articulated the incorrect standard at the end of the reasonable fear review hearing, but he articulated, or they used language throughout the hearing that indicated that they were applying the appropriate standard of review. This is not what the I.J. did in Petitioner's case. In this case, the I.J. didn't provide any reasoning in the written decision, nor did he provide any reasoning throughout the hearing. If you review the transcript of the hearing, there's nothing to really indicate why the I.J. is ultimately coming to the conclusion that he does. And I provided that in Tai Divosian, a very analogous setting, this Court has required the BIA to provide a minimum degree of clarity and dispositive reasoning when they're – when the BIA summarily affirms an I.J.'s decision. So similarly here, an I.J. should be required to provide reasoning and provide clarity as to the decision that he took. But that's just not in the record, and that's not in the written decision. The written decision is only six sentences, which is typical in these types of proceedings. They are very short. But at minimum, he could have provided some reasoning to really demonstrate that he heard Petitioner's claim and that he really thought through how this applied to the appropriate laws, and he didn't do that.  Is it enough for the I.J. to say that it has reviewed the record and that it agreed with the officer? Not necessarily, Your Honor, because while the I.J. did say that he was going to review the asylum officer's decision, it should be required of an I.J. to provide that clarity, that reasoning that really demonstrates how he thought through the claim. Because, for example, in the withhold – in the section about past persecution, he doesn't – or about withholding and why the I – why the Petitioner hadn't established that he provided a reasonable possibility of facing persecution. He doesn't explain why the Petitioner didn't show that. Counsel, do you have a case in the context of a reasonable fear interview that sets forth those standards, as opposed to a full-blown asylum hearing? Not necessarily, Your Honor. The – the – So there's a little bit of a difference between an asylum hearing and a reasonable fear, that proceedings are intentionally truncated. Would you agree for a reasonable fear?  And so should we import into that truncated procedure the same standards that we have for full-blown immigration hearings? Well, no, Your Honor. And they – you're correct. They are very distinct. They're very distinct in nature. And at a full-blown hearing, an I.J.'s decision can be very – many pages long, because they're going over an extensive record. They're going through the credibility of the – of the testimony of the witness and potentially other – other witnesses that will be brought to the stand. But it's only six sentences that the I.J. provided in his written decision. So one of those sentences could have had more. So he erred us to procedure, but he also erred us to substance, because extensive proof isn't needed to establish a reasonable possibility of persecution or torture. He needs to – One of the arguments that you make is that the I.J. didn't use the reasonable possibility standard. But do you agree that the asylum officer did with regard to torture? With regard to torture – well, the asylum officer made – had misapplication of the law throughout the – throughout the – But I'm looking at the applicant also failed to establish a reasonable possibility that a public official would consent or acquiesce to his cartel, Jalisco. Nueva Generacion Harming Him. This is insufficient to establish a reasonable possibility that the police would consent or acquiesce, et cetera. So it – it does appear at least that the asylum officer used the right standard of proof on torture. Well, the – but the asylum officer also misapplied the facts. So the asylum officer also states that – that the applicant believes that the police would not help him. But let's just stay on the standard of proof. Okay. Yes. Okay. So you agree that AO – the asylum officer did use the correct standard of proof for torture? I mean, he has the reasonable possibility or she has a reasonable possibility language twice. The reasonable possibility language is in there. That – that is true.   And then if the I.J. then said, I concur in the DHS reasonable fear determination, then why does that not incorporate by reference that correct standard of proof as to torture? So this Court has held that the I.J.'s decision can incorporate the asylum officer's  That is true. But when reviewing the asylum officer's decision, that was when it was incumbent on the I.J. to realize that the – that it was incorrect. So – That what was incorrect? The application – well, first, the application of the facts as to that decision. Because, like I mentioned, the asylum officer states that Petitioner – that the applicant believes that the police would not help him. That's not what the Petitioner stated. Throughout the hearing, the Petitioner talked about police corruption and a concerted effort between the police and the cartel to persecute Petitioner. So that's very – that's distinct from saying that he just believes that the police won't do anything. Because there are – So are you then walking away from your standard of proof argument? Because that seems like a different argument. Well, that – okay. Yes, that is a different argument. But the reasonable – as to the reasonable possibility standard, it's still – when the I.J., in his six-sentence decision, applied reasonable possibility, he didn't apply reasonable possibility. He said likely. He used the word twice. And likely is sufficiently higher than reasonable possibility. And you say likely is more than 50 percent. So you're equating likely with more likely than not. And that's not inherently the case, is it? Why is likely always the same as more likely than not? Well, when we look at the word likely and we just give a plain – a plain language understanding of what that word means, Merriam-Webster's dictionary discusses that word as having a high probability of occurring, that it is very probable. And that's very distinct from reasonable possibility, because reasonable possibility is a 10 percent chance. It – and it's a 10 percent chance that if the facts are taken as true, that the Petitioner may face persecution or torture. So — Can I ask about your 28J letter? Do you think Riley applies here? Does there need to be an equitable tolling analysis? And who should do that, if that's the case? Thank you, Your Honor. May I answer your question and reserve for rebuttal? Yes. Okay. Thank you. So as to the 28J letter, it doesn't apply in Petitioner's case necessarily, because what Riley says is that the 30-day tolling – or the 30-day window for submitting a petition for review to the relevant court of appeals needs to be done upon the issuance of a final administrative removal order, which is distinct but similar enough in this because those are very similar. That's why I brought the decision to the Court's attention, because it does suggest that the deadline begins to toll at the moment – or the deadline begins to run at the issuance of the reinstatement order. But at the time that Petitioner submitted his PFR, it was well-established law in Alonso So at the moment that Petitioner submitted his PFR, it was timely. And I think that whether or not there should be a tolling is a question for petitions that are submitted after Riley was enacted – or made law. All right. Thank you, counsel. We'll give you a minute or two for rebuttal. Thank you so much, Your Honor. I appreciate it. Good morning, Your Honors. May it please the Court. Anthony Nardi on behalf of the Attorney General. Your Honors, two main points today. First, Petitioner has failed to demonstrate that the record compels reversal of the agency's negative reasonable-fear finding. And second, there are no procedural irregularities in the record that require this Court to remand on due process concerns. I'm happy to answer any of the Court's questions, but I wanted to turn first to Judge Coe's question, Fitzwater's question, regarding the use of likely and the procedural consequences of that. Primarily, we still agree that, yes, Canales controls here. I think it's – Canales can't control. It's unpublished. Excuse me, Your Honor. I agree. It doesn't control. However, it's a good example of how this Court looks to the totality of the circumstances when looking at the use of that language. And in particular, though, I'd also like to point to Judge Coe's question regarding the use of likely. As this Court said in Bartolome, which does control here, the reasonable-possibility standard is equivalent to the likelihood-of-future-harm standard in the asylum context, which typically in that stand – in that context, the word likely is often used to refer to that future harm. So, again, it seems here that the IJ was referring to that exact standard which this Court has held is equivalent to the reasonable-possibility standard. Additionally, just addressing the 28J letter and Riley, the government 's position here is that the Court is free to address the merits of this case and adjudicate the case on the merits without addressing Riley. Just that we disagree with you that likely is the same thing as reasonable-possibility. And in the asylum officer's decision, it doesn't even say what standard of proof is being applied. I mean, at least as to torture, the officer uses reasonable-possibility, so we don't even know. And then the IJ says, well, I'm concurring with the standard of proof, with the AO's determination, and then says likely to be persecuted hasn't been shown. I just don't see how that's the correct standard of proof. Waxman. Your Honor, at the beginning of the immigration judge's decision, it does state the correct standard, the reasonable-possibility standard for both. Kagan. That's just a check the box. The actual reasons and this judge's individual contribution says likely twice. Your Honor, I agree. Those are the words that were used. However, I don't think this Court has ever applied a magic words test to this analysis. It's looked to the totality of the circumstances. And, again, I would point to Canales as an example of there, I agree, the IJ in that case used more likely than not on two occasions, which clearly references a different standard of review and a much higher threshold that had to be met. However, the Court said looking at everything there, that did not demonstrate that the IJ was improperly applying the incorrect standard of review or burden of proof. And here, I think it's also clear that the IJ specifically stated on the record that he had reviewed all of the asylum officer's notes, he had reviewed the additional evidence, he took new testimony, and then, yes, he perhaps inarticulately used likely, but, again, that might be the case. Yeah. I think this is actually different than in Canales. In Canales, the immigration judge used the correct reasonable possibility standard in her written decision, used language indicating her reliance on the reasonable possibility standard throughout the hearing, and affirmed the AO's decision, which had the correct legal standard. So all of those don't seem to be present here. Your Honor, specifically with respect to the likelihood of future harm, yes, the IJ does cite the asylum officer does not use that standard in that section of the decision. However, the asylum officer does cite the correct standard, the reasonable possibility standard in the torture analysis. And again the IJ does not invoke the right standard of proof. Your Honor. There's no evidence of that. Your Honor, the asylum officer doesn't state any specific standard that's to be used there. Right. So how so that would be a distinction from Canales, right? I agree, Your Honor. Okay. I only point to Canales to show the overarching point that it's not the court doesn't look individually at specific words that are used in different places. They look to the record as a whole to determine whether the correct standard is correct. Right. So let's see the other bases on which the Canales court and Judge Rawlinson is correct. It's a mem dispo anyway, so it's not controlling. But okay, so the AO didn't use the correct standard, that we have no evidence of that. The immigration judge didn't use language indicating reliance on the right standard throughout the hearing. And the written decision doesn't articulate the correct standard. So I guess I'm not seeing how Canales is persuasive here. Your Honor, fundamentally, I think the IJ did, at the end of it, check the box next to the correct standard at the beginning of his decision. And again, I think that really what it comes down to is the fact that there is, under this Court's case law, there is no distinction in the standard between reasonable possibility and likelihood of future harm. As this Court in Bartolomé said, the state what to give meaning to reasonable possibility, it said that that is directly referencing the asylum standard for future persecution, which, again, is typically referred to as a likelihood of future harm. So I think I agree that there is not the exact word, reasonable possibility, in the IJ's decision, but it seems like he's referencing the correct standards that were also articulated in the cases that are cited directly after Zittinio and — You didn't file a response to the 28J letter. Is the government waiving any timeliness argument? Your Honor, the government is not waiving the timeliness arguments here. However, we think, as other panels of this Court and courts around the country have done post-Riley in these reinstatement or FIRO cases, we think the Court can reach the merits of the decision adjudicated on the merits here. Okay. So you're not going to be pressing for any kind of timeliness? Your Honor, candidly, I think everyone recognizes that Riley is a sizeable change. Intervening. Yeah. Intervening. Okay. Thank you. Thank you for taking that reasonable position. However, counsel, I'm wondering if, from a policy standpoint, this panel ought to insist that these kinds of errors be corrected at the best place where they can be corrected. I mean, I am a little surprised by the — sort of the callous use of the standards. It would seem like the standards are extremely important in the decision-making. Would you care to address that, whether it's really better for us to insist on accuracy at the place where it can be corrected? Your Honor, I agree that the agency should be accurate in those standards. But, again, I think fundamentally our position is that there is actually no distinction as this Court in Bartolomé said. Bartolomé directly links the reasonable possibility standard with the well-founded fear future standard in asylum, which is the exact same analysis. So, again, I think — I agree that the I.J. didn't exactly use that language, but it's the language that this Court has endorsed as being identical and being the appropriate analysis. So I don't think there is perhaps inartful but not incorrect. And just to Judge Cote, to your question, I want to be very clear that we are not conceding timeliness in this case. However, we think the panel can get to the merits here. And if the Court has no further questions. It appears not, counsel. Thank you. Thank you, Your Honors. Let's have two minutes for rebuttal. Thank you, Your Honors. The use of the word likely in the I.J.'s decision was not just inartful, but it was incorrect. And to — But does the record compel us to conclude that it was incorrect? It does. Because when we are doing a review of totality of the circumstances, when we're looking at the actual hearing and the — we're looking at the transcript of what the I.J. is discussing with the Petitioner, there's just nothing to suggest that he was applying the appropriate standard of review. He said, yes, I'll look at it, and that's all we have. There's nothing to really indicate that he was reviewing this case to ensure that it was a threshold screening. Because ultimately, at the end of the day, that's what this is. It is a screening tool that's used to design — that's designed to ensure that people who have strong claims are going to be heard at a full hearing. And that is exactly what the Petitioner provided. Well, what's your response to the government's argument that they have a case that says likely is the same as reasonable possibility? I think that's what your opposing counsel just said. Right. I did hear the opposing counsel. I just am not — I've never seen that case. I'm not aware of it. When we talk about the likelihood of future harm in asylum or in asylum cases, which are distinct from withholding cases, but we're going to be using that case or that precedent, then it is 10 percent. It is a reasonable possibility standard. But what we're — But there's no case that says likely is 10 percent. Correct. Correct. Thank you. And to your point, Judge Koh, the only time that the IJ articulated the reasonable possibility standard was in the checkbox on this forum decision. But Petitioner's unrebutted and credible testimony provided more than enough at this  I see that my time is up.  Please complete your thought, though. Okay. Thank you so much. Yes. His unrebutted credible testimony suffices for the 10 percent threshold. He has enough to get through the door. He has enough to be heard at a full hearing on withholding and cat relief. And with that, I submit, Your Honors. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. And again, we convey our thanks to the Thomas & Mack Legal Clinic for representing this petitioner. Thank you so much. This case, the case just argued, is submitted for decision by the Court.
judges: RAWLINSON, KOH, Fitzwater